IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JESSICA GRIMES,<br>**PLAINTIFF** | * | |
| | * | CIVIL ACTION<br>FILE NO. 1:12-CV-150(WLS) |
| v. | * | |
| SOUTHEAST RESTAURANTS CORP,<br>d/b/a PIZZA HUT | * | Jury Trial Demanded |
| **DEFENDANT** | * | |

## INTRODUCTION

COMES NOW the Plaintiff in the above styled matter and files this Complaint for damages, and in support of this Complaint shows the Court as follows, to wit:

## SUMMARY OF ACTION

1.

This is an action for damages against the Defendant arising under the following statutes:

The Civil Rights Act of 1866. 42 USC § 1981 ("1981").

The Fair Labor Standards Act of 1938, as amended. 29 USC §§ 201, et seq. ("FLSA")

## JURISDICTION

2.

This Court has jurisdiction of this matter pursuant to 28 USC § 1331 in that it involves a Federal question arising under the laws of the United States.

## PARTIES

3.

Plaintiff, Jessica Grimes, is female of Caucasian descent; she is a citizen of the United States.

4.

Defendant in this case is a FOREIGN corporation with its principal place of business located at 1621 EXECUTIVE AVE., Myrtle Beach, SC 29577. Defendant may be served with process at the office of its registered agent for service of process: Southeast Restaurants Corp., c/o C T CORPORATION SYSTEM, 1201 PEACHTREE STREET, N.E., SUITE 1240, ATLANTA GA 30361.

## VENUE

5.

Venue in this case is proper under 28 USC § 1391(b) in that Plaintiff resides in this judicial district and/or a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## ADMINISTRATIVE REQUIREMENTS

6.

There are no administrative remedy exhaustion requirements associated with causes of action set forth in Paragraph 1, supra.

## FACTS

7.

Plaintiff was retaliated against for complaining to the Department of Labor concerning wage and hour issues; she was also paid less than African Americans who performed the same or similar work contemporaneously to herself; she was also paid less than minimum wage for periods where her work did not fall into an exception to the minimum wage law; lastly, she was not paid overtime wages in accordance to the law for times when she worked more than a normal work week.

8.

Plaintiff commenced employment with Defendant on Sept. 22, 2010, as a server and general laborer.

9.

For the period December, 2010 to February, 2011, Plaintiff discovered her manager, Vickie Attaway, was changing her wages and tips arbitrarily; Plaintiff politely asked Attaway to reflect her true wages, time and tips, but Attaway persisted in her arbitrary scheme.

10.

Plaintiff complained to Attaway's supervisor without success and then complained to the Georgia Department of Labor (DOL) about the changes in tips, wages, and hours. Such complaints made Plaintiff's working conditions worse with retaliation for Plaintiff's complaints.

11.

April 1, 2011, Plaintiff went to the DOL to complain about Attaway's behavior.   Shortly thereafter, the quality of Plaintiff's work environment deteriorated significantly.

12.

After Plaintiff made her complaint to the DOL about Attaway's changing her hours, wages, and tips, she experienced a reduction in work hours, as evidenced by contrast of schedules before and after the complaint. Plaintiff's working environment continued to suffer.

13.

On May 26, 2011, after Plaintiff had made her complaint to the DOL, Attaway tried to terminate her for allegedly calling another manager a bitch. However, Plaintiff called Tom Hankins, Attaway's supervisor; she talked to him, and Hankins resolved the issue in a manner favorable to Plaintiff.

14.

On May 30, 2011, Attaway attempted to fire Plaintiff again - this time for a 'no call, no show' on the 28th.   However, when Attaway unsuccessfully attempted to terminate Plaintiff on the 26th, Plaintiff informed Attaway when she, Plaintiff, got her job back that she, Plaintiff, had already made plans for the 28th - that upcoming Saturday.

15.

Plaintiff informed Attaway at that time that she could not cancel the plans for the 28th, and Attaway acknowledged it, but then she asked Plaintiff to see if she could cancel - To which, Plaintiff told her rather unequivocally she was not going to be able to cancel the Plans.

16.

When Plaintiff reported for work the following Monday, the 30th, she had a termination paper waiting for her for 'no call, no show'. As a result, she called Tom Hankins again and explained the situation to him; Hankins called Attaway and asked her about the situation. As a result, Plaintiff was reinstated once again.

17.

Attaway was not deterred however, and continued to retaliate against Plaintiff for complaining to the Department of Labor by cutting Plaintiff's hours

and mistreating her.   Plaintiff remained working, however, and continued to do her job to the best of her abilities despite the retaliation.

18.

On December 8, 2011, Plaintiff reported to work knowing that she was about to get terminated for a pre-textual reason: Attaway claimed Plaintiff wrote a nasty note on the bottom of the weekly schedule when, in fact, Plaintiff did not write anything on the bottom of the weekly schedule. Plaintiff was terminated, allegedly, for the content of the writing on the bottom of the weekly schedule anyway, without regard for whether she actually did so.

19.

Plaintiff never experienced a day at work where she did not begin work and get on the 'make table' and 'cut table' and 'prep', even though she was scheduled for work as a server, and paid as a server or sub minimum wage.

20.

Attaway regularly demanded that Plaintiff come in and do preparation work to make the pizzas, cut them, box them up, answer phones, and send all the pizzas out for 3.25 a hour (which was server's pay) when there were two African Americans, both males - Malcom Stone and Chris Osborn – whose jobs were limited to making pizza and who were paid $7.50 per hour.

21.

Whenever an employee failed to show for work, Plaintiff was the person Attaway called in; Plaintiff was working full time until Attaway found out Plaintiff had gone to the Department of Labor and complained about her hours and wages.

22.

When Plaintiff noticed that Attaway was changing her wages and tips, even after going to the Department of Labor, Plaintiff emailed Tom Hankins to complain about the retaliation; Hankins responded to the first email Plaintiff sent him; however, she sent a total of 3 emails, but only got 1 reply.

23.

Hankins said he would personally resolve the illegal activities of Attaway but did not do so; however, Hankins did send an email to all of Defendant's stores stating managers or other individuals were not to change anyone's tips.

24.

Even after the emails, and up to the time of Plaintiff's termination, Attaway continued to pay Plaintiff less for the same work being done by Males, to-wit: Making and Preparing Pizzas; similarly, Attaway continued to change Plaintiff's hours, tips, and wages in contravention of the law; additionally, Attaway continued to pay Plaintiff less than minimum wage for hours she worked performing duties that were non-server related; finally, Attaway continued to retaliate against

Plaintiff for complaining to the Department of Labor as well as to Haskins with respect to the terms and conditions of her employment, hours, wages, and tips.

25.

At all times prior to her termination, Plaintiff did her job to the best of ability.

26.

At all times relating to Plaintiff's termination, Defendant acted in willful, wanton and reckless disregard for Plaintiff's federally protected rights.

## THEORIES OF RECOVERY

### Count I

The Civil Rights Act of 1866.
42 USC § 1981 ("1981")

27.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

28.

Defendant's actions as set out above constitute an actionable violation of The Civil Rights Act of 1866. 42 USC § 1981 ("1981").

29.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages

- general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

30.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

## Count II

The Fair Labor Standards Act of 1938, as amended.
29 USC §§ 201, et seq. ("FLSA")

31.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

32.

Defendant's actions as set out above constitute an actionable violation of The Fair Labor Standards Act of 1938, as amended. 29 USC §§ 201, et seq. ("FLSA").

33.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages - general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

34.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees

according to relevant law.

## Count III

Punitive Damages

35.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

36.

Defendant's actions constitutes willful misconduct, demonstrating wantonness, oppression, and the entire want of care which would raise the presumption or conscious indifference to the consequences that entitle Plaintiff to recover punitive damages pursuant to the punitive damage provisions of the statutory causes of action hereinabove stated.

## Count IV

Attorney's Fees and Expenses

37.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

38.

Plaintiff is entitled to the costs and expenses associated with bringing and

prosecuting this action, to include attorney's fees, pursuant to applicable law as contained within, and applicable to, the statutory causes of action contained herein above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays as follows:

a)     that Summons issue and Defendant be served as by law provided;

b)     that Plaintiff be awarded judgment in her favor with respect to all contentions in her Complaint;

c)     that Plaintiff be awarded actual and liquidated damages as proven at trial;

d)     that Plaintiff be awarded compensatory damages for mental and emotional suffering in an amount to be determined by the enlightened conscience of an impartial jury;

e)     that Plaintiff be awarded punitive damages in an amount to be determined by a jury at trial to be sufficient to prevent such conduct as alleged herein from occurring in the future and commensurate with the harm done to Plaintiff;

f)     that Plaintiff be awarded reasonable attorney's fees and expenses of litigation;

g)     that all issues triable by jury be tried by a jury;

h)     that all costs of this action be taxed to Defendant; and

i)     for such other and further relief as unto this Court may seem just and

equitable in the premises.

This 9th day of October, 2012.

                                              /S/John W. Roper
                                              John W. Roper

The Roper Law Firm
5353 Veterans Parkway, Suite D
Columbus, Georgia 31904
(706) 596-5353
johnroper@roperlaw.com
Georgia Bar No:   614159